**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**NICHOLAS SERVICES, LLC; and**                                   **PLAINTIFFS**
**CORR FLIGHT S., INC.**

**V.**                                                            **NO. 3:25-CV-31-DMB-RP**

**UNITED STATES DEPARTMENT OF
LABOR, a federal administrative agency;
LORI CHAVEZ-DEREMER, in her official
capacity as the Secretary of Labor;
SCOTT MORRIS, in his official capacity as
an Administrative Law Judge of the United
States Department of Labor; and JERRY R.
DEMAIO, in his official capacity as an
Administrative Law Judge of the United
States Department of Labor**                                     **DEFENDANTS**

## ORDER

Nicholas Services, LLC, and Corr Flight S., Inc., move for a temporary restraining order

and/or a preliminary injunction enjoining the United States Department of Labor, the Secretary of

Labor, and two Department of Labor administrative law judges regarding three administrative

proceedings to which they are party. At a hearing on the motion, the Court denied the request for

a temporary restraining order. However, for the reasons below, preliminary injunctive relief will

be granted.

**I**
**Procedural History**

On February 17, 2025, Nicholas Services, LLC, and Corr Flight S., Inc., filed an amended

complaint in the United States Court for the Northern District of Mississippi against the United

States Department of Labor ("DOL"); Vince Macone, in his official capacity as acting Secretary

of Labor; Scott Morris, in his official capacity as an administrative law judge for the DOL; and

Paul W. Johnson, Jr., in his official capacity as an administrative law judge for the DOL.[1]  In the amended complaint, the plaintiffs allege the defendants are utilizing unconstitutional agency authority by subjecting them to administrative AIR21 proceedings in violation of the Appointments Clause.[2]  Doc. #4.

On March 19, the plaintiffs filed a motion for a temporary restraining order and/or a preliminary injunction.[3]  Doc. #9.  The defendants responded in opposition to the motion on April 2, and the plaintiffs replied six days later.[4]  Docs. #19, #23.  Pursuant to notice, the Court heard oral arguments on the motion on April 11.  Doc. #28.  At the hearing, the Court denied the plaintiffs' request for a temporary restraining order and took the request for a preliminary injunction under advisement.[5]  *Id.*

On May 16, the parties filed a joint status report regarding one of the AIR21 proceedings at issue.  Doc. #33.  The plaintiffs filed a status report along with supplemental authority on May 31.  Doc. #34.  On July 23, the defendants filed supplemental authority, to which the plaintiffs responded on August 6.  Docs. #35, #36.  The plaintiffs filed additional supplemental authority on

---

[1] Macone is no longer the Secretary of Labor, and Johnson is no longer the ALJ over the Berg matter mentioned below. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."  Accordingly, the current Secretary of Labor, Lori Chavez-DeRemer, is substituted in place of Macone, and ALJ Jerry R. DeMaio is substituted in place of Johnson.  Doc. #9 at 1 n.1.

[2] The plaintiffs filed their original complaint on January 31, 2025.  Doc. #1.  Because they had not yet served the original complaint on the defendants, they amended the complaint as a matter of right without the defendants' consent or the Court's leave.  FED. R. CIV. P. 15 (a)(1).

[3] The next day, the Court held a telephonic status conference with the parties.  Doc. #13.  On March 24, the Court entered an order stating that "as discussed during the … telephonic status conference with counsel for the parties: (1) a response to the TRO/PI Motion may be filed no later than April 2; (2) a reply in support of the TRO/PI Motion may be filed no later than April 8; and (3) a hearing on the TRO/PI Motion will be set for April 11."  Docs. #13, #15.

[4] On April 9, the plaintiffs moved for leave to supplement the record with the complaints from three Lafayette County Circuit Court lawsuits filed by Corr Flight, which the Court granted the next day.  Docs. #24, #25.

[5] Because the Court denied the motion for a temporary restraining order at the hearing, the Court need not discuss that request further.  Even had a temporary restraining order been granted at the hearing, it would have expired long ago. *See* FED. R. CIV. P. 65(b)(2) (setting 14-day expiration date for temporary restraining orders).

2

September 5, and the defendants responded to it on October 1. Docs. #37, #38. Further supplemental authority was filed by the plaintiffs on October 8, Doc. #39.

## II
## Rule 65

Federal Rule of Civil Procedure 65(a) authorizes a court to issue a preliminary injunction upon notice to the adverse party.[6] A preliminary injunction maintains the status quo, "preserv[ing] the court's ability to render a meaningful decision after a trial on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Preliminary injunctions are not granted as of right but are vested in the district judge's equitable discretion. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). They are considered extraordinary remedies which are not lightly or routinely granted. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").[7] Due to the highly fact-dependent nature of preliminary injunctions, if a preliminary injunction is granted, a court must mold any injunctive relief that it orders to meet the necessities of the particular case. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975).

## III
## AIR21 Background

The Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21") provides that an employer in the aviation industry "may not discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment" because the employee provided his employer or the government information relating

---

[6] The notice requirement can be met in the form of a hearing. As mentioned above, the Court held a hearing on the motions for temporary restraining order and/or preliminary injunction on April 11, 2025. Doc. #28.

[7] *See also Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) ("A preliminary injunction is an 'extraordinary remedy.'") (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Canal Auth.*, 489 F.2d at 576 ("[A preliminary injunction] is an extraordinary remedy, not available unless a plaintiff carries his burden of persuasion as to all of the four prerequisites.").

3

to any violation of any order, regulation, or standard of the Federal Aviation Administration or other federal law; filed a proceeding relating to any violation; testified in a violation proceeding; or participated in a violation proceeding. 49 U.S.C. § 42121(a).

An employee who believes that his has been discharged or discriminated against in violation of AIR21 "may … file … a complaint with the Secretary of Labor alleging such discharge or discrimination." *Id.* at (b)(1). After the person named in the complaint has had an opportunity to respond, "the Secretary of Labor shall conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit." *Id.* at (b)(2)(A). In conducting the investigation, the Secretary of Labor may enlist the Occupational Safety and Health Administration ("OSHA"). 29 C.F.R. § 1979.104. After the Secretary's investigation, "either the person alleged to have committed the violation or the complainant may file objections to the findings or preliminary order, or both, and request a hearing on the record."[8] 49 U.S.C. § 42121(b)(2)(A). "Upon receipt of an objection and request for hearing, the Chief Administrative Law Judge will promptly assign the case to a judge" for hearing. 29 C.F.R. § 1979.107(b).

Any party who objects to the findings of the administrative law judge ("ALJ") "must file a written petition for review with the Administrative Review Board [("ARB")]." *Id.* at § 1979.110(a). "The Secretary of Labor has granted [the ARB] authority and assigned responsibility … to issue agency decisions after review or on appeal of matters arising under a wide range of employee protection laws … includ[ing] … transportation … whistleblower protection."[9] "If the ARB concludes that the party charged has violated the law, the ARB shall order the party charged

---

[8] If no hearing is requested within thirty days, "the preliminary order shall be deemed a final order that is not subject to judicial review." 49 U.S.C. § 42121(b)(2)(A).

[9] *Establishment and Mission of the Board*, U.S. DEP'T OF LABOR, https://www.dol.gov/agencies/arb/about (last visited Feb. 12, 2026).

4

to take appropriate affirmative action to abate the violation, including, where appropriate, reinstatement of the complainant to that person's former position, together with the compensation (including back pay), terms, conditions, and privileges of that employment;" however, "[i]f the ARB concludes that the party charged has not violated the law, the ARB shall issue an order denying the complaint." *Id.* at § 1979.110(d), (e).

Only after the ARB has completed its review "does AIR21's statutory scheme contemplate judicial review." *Bombardier, Inc. v. U.S. Dep't of Lab.*, 145 F. Supp. 3d 21, 27 (D.D.C. 2015). "If a person is 'adversely affected or aggrieved' by the final order of an [ALJ] or the [ARB], then that person has sixty days to file a petition for review 'in the United States Court of Appeals for the circuit in which the violation of the whistleblower protection provisions allegedly occurred or the circuit in which the complainant resided on the date of such violation.'" *Id.* (quoting 49 U.S.C. § 42121(b)(4)(A)).

**IV**
**Analysis**

Maintaining that the DOL's administrative proceedings are unconstitutional because DOL administrative law judges ("ALJs") are insufficiently accountable to the President, the plaintiffs request a preliminary injunction "enjoining Defendants from issuing any further rulings, conducting any hearings, or otherwise continuing" the administrative proceedings originated against them by former employees Colin DeBuse, Adam Kozola, and Gregory Berg. Doc. #9 at 2. Opposing such relief, the defendants respond that the Court does not have jurisdiction over the plaintiffs' constitutional claim; the plaintiffs have not made the requisite showing for a preliminary injunction; and even if the plaintiffs had made the requisite showing, severance is the proper remedy. Doc. #19 at PageID 208–09.

**A. Jurisdiction**

The defendants argue that "Plaintiffs' challenges to the ongoing DOL administrative proceedings are not properly before this Court because AIR21 explicitly bars district court jurisdiction over [their] claims;" "[u]nder the statute, Congress required that judicial review of a 'final order' by DOL in AIR21 whistleblower cases like this one be channeled directly to an appropriate 'United States Court of Appeals;'" a portion of AIR21 "provides that 'an order of the Secretary of Labor with respect to which review could have been obtained … shall not be subject to judicial review in any criminal or other civil proceeding;'" "[t]he Supreme Court has repeatedly held that district courts lack jurisdiction over suits, like Plaintiffs', that attempt to bypass an exclusive remedial scheme established by Congress;" the Eastern District of North Carolina "recently ruled that it likely did not have jurisdiction over a similar case seeking to enjoin an administrative proceeding pursuant to a nearly identical section of the whistleblower provision of the Food Safety Modernization Act;" and the Southern District of Texas "determined that a similar statutory provision precluded jurisdiction over a challenge to the National Credit Union Association's structures and procedures."[10]  Doc. #20 at 8–10 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *Thunder Basin Coal v. Reich*, 510 U.S. 200 (1994); *Perdue Farms Inc. v. Su*, No. 5:24-CV-477, 2025 WL 338283, at *2 (E.D.N.C. Jan. 29, 2025); and *Moats v. Nat'l Credit Union Admin. Bd.*, No. 3:23-cv-147, 2024 WL 1724271, at *4 (S.D. Tex. Apr. 9, 2024), *aff'd*, 153 F.4th 449 (5th Cir. 2025)).

Citing *Cochran*,[11] the plaintiffs reply that "[u]nder binding Fifth Circuit precedent – as affirmed by the Supreme Court – this Court has jurisdiction over [their] constitutional challenge;"

---

[10] The defendants also argue that "[t]he Court's lack of jurisdiction is particularly apparent with regard to the DeBuse matter, where the administrative proceedings have essentially concluded, and which Plaintiffs have stated that they plan to appeal to the Fifth Circuit Court of Appeals imminently."  Doc. #20 at 10.

[11] 20 F.4th at 200–01.

"*Cochran* interpreted a statute with a judicial review provision substantially identical to AIR21's judicial review provision … and held the provision had 'absolutely nothing whatsoever to do with' a constitutional challenge in the district court;" "*Cochran* controls – a point the Government appears to impliedly concede;" "[they] are mounting a constitutional challenge, not appealing any orders Judge Morris, Judge DeMaio, or the Secretary have issued;" and "[a]ccordingly, Section 42121(b)(4)'s language permitting an appeal from an AIR21 order does not apply and does not strip this Court of jurisdiction." Doc. #23 at 1–2.

In the supplemental authority they submitted, the plaintiffs "apprise the Court that … the Fifth Circuit held that … district courts have subject-matter jurisdiction to enjoin unconstitutional proceedings similar to the AIR21 proceedings, and … injunctive relief is proper in such circumstances." Doc. #37 at 1 (quoting *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, 151 F.4th 761 (5th Cir. 2025)). The defendants' response to such supplementary authority argues that the statutory provision in *Space Exploration*—the Norris-LaGuardia Act—is "distinct in important ways" from AIR21: "[t]he Norris-LaGuardia Act withdraws jurisdiction from district courts in cases involving or growing out [of] a labor dispute;" "[t]he relevant language in AIR21 excluding district court jurisdiction is not similarly limited to cases involving or resulting from a labor dispute" but "[i]nstead, it strips district-court jurisdiction for review of any agency order;" and "[i]n contrast to the Norris-LaGuardia Act, AIR21's jurisdictional language is comparable to the Federal Deposit Insurance Act ("FDIA") …, which the Fifth Circuit recently interpreted as stripping district courts of jurisdiction when a plaintiff seeks to enjoin an administrative proceedings on constitutional grounds." Doc. #38 at 1–2 (citing *Burgess v. Whang*, 152 F.4th 579, 594 (5th Cir. Aug. 25, 2025)).

The plaintiffs reply that "[t]he FDIA expressly states that district courts do not 'have

7

jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order;" "AIR21 contains no such prohibition against enjoining an ALJ proceeding before a decision is issued – it instead provides that once the DOL actually rules, the review of the order must be by a circuit court of appeal, not a district court;" and "the posture of *Burgess* was different than the posture here." Doc. #39 at 1–2 (quoting 12 U.S.C. § 1818(i)(1)).

Subject matter jurisdiction is generally a threshold question. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). "Congress gave federal district courts jurisdiction over 'all civil actions arising under the Constitution,'" *Cochran*, 20 F.4th at 199 (citing 28 U.S.C. § 1331) (emphasis omitted), "[b]ut sometimes Congress leapfrogs district courts by channeling claims through administrative review and directly to federal appellate courts," *Bank of La. v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 922 (5th Cir. 2019). In other words, a congressionally created statutory review scheme can divest a federal court of jurisdiction if it "provides the exclusive means of review for constitutional claims." *Elgin*, 567 U.S. at 8. The question in this case is whether Congress established a statutory review scheme in 49 U.S.C. § 42121—which provides the regulatory process for AIR21 claims—that precludes the plaintiffs' constitutional claims.

Congress can preclude district court jurisdiction through a statutory review scheme either explicitly or implicitly. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). "To discern an explicit preclusion, courts examine whether the text … expressly limits the jurisdiction that other statutes confer on district courts, such as 28 U.S.C. § 1331." *Moats*, 153 F.4th at 452 (internal quotation marks omitted) (quoting *Bank of La.*, 919 F.3d at 923). Regarding implicit preclusion, courts analyze (1) "whether the statutory scheme displays a fairly discernible intent to limit jurisdiction," and (2) "whether the claims at issue are of the type Congress intended to be

reviewed within the statutory structure."[12] *Burgess*, 152 F.4th at 586 (cleaned up). Because 49 U.S.C. § 42121 does not explicitly preclude district court jurisdiction, the Court will analyze the two factors regarding implicit preclusion.

### 1. Fairly discernable Congressional intent to limit jurisdiction

In determining whether the statutory scheme displays a fairly discernible intent to limit jurisdiction, "[c]ourts look to the 'text, structure, and purpose' of the statutory scheme." *Burgess*, 152 F.4th at 586 (quoting *Elgin*, 567 U.S. at 10). Under 49 U.S.C. § 42121(b)(4)(A), "[a]ny person adversely affected or aggrieved by an order issued … may obtain review of the order in the United States Court of Appeals for the circuit in which the violation … allegedly occurred or the circuit in which the complainant resided on the date of such violation." An order subject to review by a United States Court of Appeals "shall not be subject to judicial review in any … other civil proceeding." *Id.* at § 42121(b)(4)(B); *see BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("We start, of course, with the statutory text.").

First, the AIR21 statutory review scheme states that "person[s] adversely affected or aggrieved by an order issued" may petition the relevant court of appeals to review that order. 49 U.S.C. § 42121(b)(4)(A). The statute does not mention parties who have not yet received a final order from an ALJ or the ARB, like the plaintiffs here.

Second, the statute is phrased in permissive terms, stating that a person adversely affected or aggrieved by an order "may" obtain review in the court of appeals. *Id.* It does not say that an

---

[12] Based on these factors, the Fifth Circuit has held that "12 U.S.C. § 1818 (i)(1) explicitly precludes district court jurisdiction" to enjoin the Federal Deposit Insurance Corporation from issuing a final order, *Burgess*, 152 F.4th at 594; that the National Labor Relations Act "withdraws jurisdiction from courts in cases 'involving or growing out of a labor dispute,'" but not cases that "fall outside" of the Act's definition of labor dispute, *Space Expl.*, 151 F.4th at 771 (citing 29 U.S.C. § 160(e)); and that 12 U.S.C. § 1786(k)(1) "explicitly precludes district court jurisdiction to 'affect by injunction or otherwise the issuance or enforcement of'" a notice or order of the National Credit Union Administration Board, *Moats*, 153 F.4th at 455. It does not appear, however, that the Fifth Circuit has determined whether AIR21 precludes district court jurisdiction over claims challenging the constitutionality of agency authority.

adversely affected or aggrieved party "shall" or "shall not" do anything. *Id.* Thus, interpreting the statute's "permissive language as eliminating alternative routes to federal court review, especially in the context of separation-of-powers claims" "would be troublingly counterintuitive." *Cochran*, 20 F.4th at 201.

Third, Congress' use of mandatory terms elsewhere in the AIR21 statutory review scheme indicates that its use of a permissive term with respect to review by a court of appeals was purposeful.[13] Consequently, the text of § 42121(b)(4)(A) does not display a fairly discernible congressional intent to limit district court jurisdiction over the constitutional challenge here.

### 2. Congressional intent to review constitutional claims within statutory structure

"In analyzing th[e] second inquiry, courts examine three factors: (1) whether preclusion could foreclose all meaningful judicial review; (2) whether the suit is wholly collateral to a statute's review provisions; and (3) whether the claims are outside the agency's expertise."[14] *Burgess*, 152 F.4th at 586 (internal quotation marks omitted) (quoting *Thunder Basin*, 510 U.S. at 212–13).

Regarding whether preclusion could foreclose all meaningful judicial review, "*Thunder*

---

[13] *See* 49 U.S.C. § 42121(a) (Employers in the aviation industry "*may not* discharge an employee or otherwise discriminate against an employee" because the employee provided information relating to any violation of federal law.) (emphasis added); *see also id.* at § 42121(b)(2)(A) ("[T]he Secretary of Labor *shall* conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit.") (emphasis added).

[14] Using these factors, the Supreme Court has held that the Federal Mine Safety and Health Amendments Act of 1977's administrative structure precludes district court jurisdiction over pre-enforcement challenges, *Thunder Basin*, 510 U.S. at 207 (citing 30 U.S.C. § 801 *et seq.*); that the Civil Service Reform Act of 1978's review scheme precludes district court jurisdiction over claims that the statute is unconstitutional, *Elgin*, 567 U.S. at 22 (citing 5 U.S.C. § 1101 *et seq.*); that the Sarbanes-Oxley Act of 2002 does not preclude district court jurisdiction over claims regarding the constitutionality of the Security and Exchange Commission' Public Company Accounting Oversight Board, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489–91 (2010) (citing 15 U.S.C § 78y); that the Federal Trade Commission Act does not preclude district court jurisdiction over claims challenging the constitutionality of agency authority, *Axon*, 598 U.S. at 195–96 (citing 15 U.S.C. § 41 *et seq.*); and that the Securities and Exchange Commission Act does not preclude district court jurisdiction over claims challenging the constitutionality of agency authority, *id.* (citing 15 U.S.C. § 78a *et seq.*). It does not appear, however, that the Supreme Court has addressed whether AIR21 precludes district court jurisdiction over claims challenging the constitutionality of agency authority.

*Basin* and *Elgin* both make clear that adequate judicial review does not usually demand a district court's involvement" since "[r]eview of agency action in a court of appeals can alone 'meaningfully address' a party's claims." *Axon*, 598 U.S. at 190 (quoting *Thunder Basin*, 510 U.S. at 215, and citing *Elgin*, 567 U.S. at 21). However, if there is an issue "stemming from the interaction between the alleged injury and the timing of review"—such as if the alleged harm "is impossible to remedy once the proceeding is over"—district court review may be permitted. *Id.* at 191.

Here, judicial review of the plaintiffs' claims would "be meaningless if delayed until after the agency proceedings conclude." *Space Expl.*, 151 F.4th at 771. The plaintiffs claim they are "being subject to an illegitimate administrative proceeding overseen by an illegitimate decisionmaker," and regardless of the ALJs decisions in the three matters, the harm alleged would persist. Doc. #10 at 9–10. "If the injury is the process itself, review after the fact comes too late: 'A proceeding that has already happened cannot be undone,' rendering later review 'too late to be meaningful." *Space Expl.*, 151 F.4th at 771 (quoting *Axon*, 598 U.S. at 191). Without district court jurisdiction, the plaintiffs "must endure an unconstitutional proceeding—an injury that 'cannot be undone' ex post." *Id.* (quoting *Axon*, 598 U.S. at 191). The first factor favors district court jurisdiction.

As to whether the suit is wholly collateral to a statute's review provisions, the plaintiffs challenge the DOL's authority to proceed in AIR21 matters at all based on their allegations that its processes employ unconstitutionally insulated administrative law judges. The collateralism factor weighs in favor of the plaintiffs "because they are challenging the [DOL]'s power to proceed at all, rather than actions taken in the agency proceedings." *Axon*, 598 U.S. at 192. The second factor favors district court jurisdiction.

11

Finally, the plaintiffs' constitutional claims are outside the DOL's competence and expertise because constitutional questions regarding separation of powers "lie outside the agency's core competence—and squarely within the judiciary's." *Space Expl.*, 151 F.4th at 772. The plaintiffs bring "standard questions of administrative law, which the courts are at no disadvantage in answering." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010).

Because the text of § 42121(b)(4)(A) does not display a fairly discernible congressional intent to limit district court jurisdiction over the plaintiffs' constitutional claim, AIR21's statutory review scheme would foreclose meaningful review of the plaintiffs' claim, the plaintiffs' constitutional claim is wholly collateral to the statute's review provisions, and the plaintiffs' claim falls outside the DOL's expertise, this Court has subject matter jurisdiction to review the plaintiffs' claims.

### B. Severance

As another initial matter, the Court "consider[s] whether severability affects the availability of preliminary injunctive relief." *Space Expl.*, 151 F.4th at 772. The defendants argue that "even if [the plaintiffs] could [make the requisite showing for preliminary relief], [they] would not be entitled to an injunction halting the administrative proceedings; rather, the proper remedy would be severance of the offending provisions;" "[t]he Supreme Court has taken [a severance] approach every time it has found a structural constitutional defect in the appointment or removal provisions of a statute in the past fifteen years; "severing the statutory removal restrictions would remedy the alleged constitutional violations;" and "[w]here severance would be the appropriate final remedy, a plaintiff is not entitled to an injunction (preliminary or otherwise) against administrative proceedings, which would afford a greater remedy than what it could obtain at final judgment." Doc. #20 at 11–12, 16–17 (citing *Free Enter.*, 561 U.S. at 508–09, *Seila L. LLC v. Consumer Fin.*

12

*Prot. Bureau*, 591 U.S. 197, 237 (2021), and *United States v. Arthrex, Inc.*, 594 U.S. 1, 23–25 (2021)).

The plaintiffs initially replied only that "the Government's idea that the ALJ provision be severed from AIR21 is not a basis to deny the preliminary injunction." Doc. #23 at 4–5 (citing *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, 742 F. Supp. 3d 755, 761 (S.D. Tex. 2024)). In supplemental submission to the Court, the plaintiffs added that "the Fifth Circuit rejected the Government's argument that the possibility of severing the unconstitutional provision from the statute makes injunctive relief improper."[15] Doc. #37 at 4 (citing *Space Expl.*, 151 F.4th at 773).

While it is true that "[g]enerally speaking, when confronting a constitutional flaw in a statute, [courts] ... sever[] any problematic portions while leaving the remainder intact," *Free Enter.*, 561 U.S. at 508 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–29 (2006)), "the severability inquiry … belongs to the merits phase, when the court considers final relief," *Space Expl.*, 151 F.4th at 773. Because "the possibility of severance does not preclude preliminary injunctive relief," the Court will proceed to the preliminary injunction issue. *Id.*

### C. Preliminary Injunction

The plaintiffs seek a preliminary injunction "enjoining Defendants from issuing any further rulings, conducting any hearings, or otherwise continuing with" the DeBuse, Kozola, and Berg AIR21 proceedings based on allegations that the DOL ALJ system "violates the Appointments Clause in Article II of the Constitution." Doc. #10 at 1–2. Specifically, the plaintiffs claim that DOL ALJs are unconstitutionally insulated by two layers of for-cause removal protection. *Id.* at 6–7.

---

[15] Regarding this supplemental authority, the defendants respond that "if the Court concludes that it has jurisdiction over this dispute, [they] urge the Court to order summary judgment briefing so that the Court can consider whether severing the challenged removal protections is the proper remedy." Doc. #38 at 3. The Court will not consider at this time this request in the defendants' response. L.U. Civ. R. 7(b)(3)(C).

> A preliminary injunction is warranted only "if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."

*Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463–64 (5th Cir. 2021) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)). When the government is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Fifth Circuit "ha[s] cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

### 1. Substantial likelihood of success on merits

The plaintiffs argue that "the President must have the 'power to remove—and thus supervise—those who wield executive power on his behalf;'" "the DOL … violate[s] this requirement by utilizing ALJs the President cannot remove;" "DOL ALJs are protected by two layers of restrictions: they can only be removed for cause, a decision that is made by the [Merit Systems Protection Board ("MSPB")], who the President in turn can only remove for inefficiency, neglect of duty, or malfeasance in office;" Fifth Circuit precedent "requires that DOL ALJs not be insulated by two layers of good-cause removal protections;" and "the DOJ has admitted that the two-tiered removal systems violate the Appointments Clause."[16]  Doc. #10 at 6–8 (emphasis omitted) (quoting *Seila L.*, 591 U.S. at 204, and *ABM Indus. Grps., LLC v. U.S. Dep't of Lab.*, 756

---

[16] The plaintiffs attached to their motion a February 20, 2025, memorandum from former Acting Solicitor General Sarah M. Harris to Speaker of the House Mike Johnson, which states that "the Department of Justice has concluded that the multiple layers of removal restrictions for … ALJs … in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, … the Department will no longer defend them in court, and … the Department has taken that position in ongoing litigation." Doc. #9-1.

F. Supp. 3d 468, 476 (S.D. Tex. 2024)).

The defendants respond that "Plaintiffs are not likely to succeed[] because they have not made the showing of harm required by Supreme Court and Fifth Circuit (and other appellate) caselaw to obtain relief on a claim challenging removal protections for agency officers;" "[t]he Supreme Court explained in *Collins v. Yellen* that a plaintiff challenging a removal protection of an agency officer is entitled to relief only when the challenged protection 'inflicted compensable harm' on the plaintiff [and that] 'the unlawfulness of a removal provision' applicable to a lawfully appointed officer 'does not strip the officer of the power to undertake the other responsibilities of his office;'" "[t]he Fifth Circuit distilled from *Collins* 'three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor;'" "Plaintiffs have not even attempted to make the showing required by *Collins* and [the Fifth Circuit];" and "[s]ome of the cases cited by Plaintiffs reasoned that the *Collins* analysis is inapplicable or operates differently where a litigant seeks protective injunctive relief that would prevent an ALJ hearing from being held[, b]ut the Fifth Circuit has already squarely rejected that reasoning."  Doc. #20 at 11, 12–14 (quoting 594 U.S. 220, 258, 259 & n.23 (2021), and *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 632 (5th Cir. 2022)).[17]

The plaintiffs reply that "[i]n response to [their] argument that it is violating the Constitution, the Government is silent[, t]hat silence … establishes that the ALJs' two tiers of

---

[17] The Supreme Court reversed the Fifth Circuit in *Community Financial Services* on other grounds.  *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024).  However, as acknowledged by the Fifth Circuit, the Supreme Court's reversal "did not address the other issues [it] decided in the case."  *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 104 F.4th 930 (5th Cir. 2024).  Thus, "[t]he harm analysis, applying the three prerequisites … remain controlling law in our circuit."  *Traffic Jam Events, L.L.C. v. Fed. Trade Comm'n*, No. 21-60947, 2025 WL 1904566, at *3 (5th Cir. July 10, 2025).

removal protection violate the Appointments Clause[, and t]he inescapable corollary is that [they] are likely to prevail on the claim challenging that admittedly unconstitutional system;" "*Axon* makes … clear that 'being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker' is an 'injury [that] is impossible to remedy once the proceeding is over,'" "at least five district courts in the Fifth Circuit have applied [*Axon*] to find irreparable injury for injunctive relief," "the Fifth Circuit [has] acknowledge[ed] that 'when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary;'" "*Cochran* shows that [they] need not satisfy *Collins* to show irreparable injury" and "even if [they] must satisfy *Collins*, they have done so." Doc. #23 at 2–5 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)).

In supplemental authority, the defendants notified the Court of the Fifth Circuit's decision in *Traffic Jam* and argued that "the Fifth Circuit very clearly held that the controlling test for proving harm in Appointments Clause arguments derives from *Community Financial Services*;" "Plaintiffs in [this] case have consistently held the position that merely being subjected to administrative proceedings before and [sic] unconstitutionally appointed [ALJ] is all that needs to be shown to prove irreparable harm;" and "[t]he Fifth Circuit says otherwise and Nicholas Services, like Traffic Jam, failed to argue how the allegedly unconstitutional removal provisions have caused it harm – and therefore cannot prevail in its request for a preliminary injunction." Doc. #35 at PageID 313–14. The plaintiffs respond that *Traffic Jam* does not "deal with the same arguments urged by [them] in this case;" "[i]n *Traffic Jam*, Traffic Jam Events, L.L.C. raised its Appointments Clause challenge only after the Federal Trade Commission had already ruled – it did not seek to enjoin the proceedings altogether;" "by contrast [they] seek to enjoin constitutionally illegitimate proceedings before they occur;" and "*Axon* and *Cochran* hold that this

16

procedural distinction is material, as 'being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker' is an 'injury that is impossible to remedy once the proceeding is over.'" Doc. #36 at 1–2 (quoting Doc. #35 at PageID 313, and *Axon*, 598 U.S. at 175).

### a. Standing

"[S]tanding … 'must be met by persons appearing in courts of first instance.'" *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997)). "To establish Article III standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 594 U.S. at 242 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As the defendants note, the Fifth Circuit held in *Community Financial Services* that for a claim regarding unconstitutional removal restriction, "the challenging party must demonstrate not only that the removal restriction violates the Constitution but also that 'the unconstitutional provision inflicted harm.'" *Cmty. Fin. Servs.*, 51 F.4th at 631 (quoting *Collins*, 594 U.S. at 258–60); Doc. #20 at 12–13. In that case, the Fifth Circuit considered "(1) a substantiated desire by the President to remove the unconstitutionality insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Id.* at 632. However, as the plaintiffs point out, the Fifth Circuit has deemed such an analysis unnecessary when, like here, there has been no final administrative judgment. Doc. #36 at 1–2; *see Cochran*, 20 F.4th at 210 n. 16 ("*Collins* does not impact our conclusion in this case because Cochran does not seek to 'void' the acts of any SEC official. Rather she seeks an administrative adjudication untainted by separation-of-powers violations."); *see also Energy Transfer*, 742 F. Supp. 3d at 761 ("For removal-restriction claims

17

that seek relief *before* an insulated actor acts, it is not that *Collins*'s causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied.") (emphasis in original).  Accordingly, the plaintiffs' claimed injury is sufficiently serious to justify review by this Court.

### b. *Constitutionality of DOL ALJ Insulation*

"In light of the impossibility that one man should be able to perform all the great business of the State, the Constitution provides for executive officers to assist the [President] in discharging the duties of his trust."  *Free Enter.*, 561 U.S. at 483 (internal quotation marks and citation omitted).  Specifically, the Appointments Clause provides that the President "shall appoint … all … Officers of the United States" and that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. CONST. art. 2, § 2, cl. 2.  The Constitution, through the Appointments Clause, "empower[s] the President to keep these officers accountable."  *Free Enter.*, 561 U.S. at 483.

Incidental to his power to appoint officers, the President has the power to remove officers. *Myers v. United States*, 272 U.S. 52, 119 (1926).  But in certain circumstances, Congress may place restrictions on the President's Article II removal power.  *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935) ("We think it plain under the Constitution that illimitable power of removal is not possessed by the President."); *see United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The constitutional authority in congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as congress may enact in relation to the officers so appointed.").  However, a court can determine whether congressional removal protection is constitutional.  *See Jarkesy v. Secs. & Exch. Comm'n*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024) (some congressional removal restrictions are

18

"constitutionally problematic.").

Thus, the three relevant inquiries here are (1) whether DOL ALJs are executive officers subject to presidential removal power, (2) whether Congress has placed a restriction on the president's removal power concerning DOL ALJs, and (3) if so, whether such restriction is unconstitutional.

### i.   Officer distinction

In *Lucia v. Securities and Exchange Commission*, the Supreme Court held that Securities and Exchange Commission ("SEC") ALJs are inferior officers subject to the Appointments Clause." 585 U.S. 237, 251 (2018); *see Jarkesy*, 34 F.4th at 464 (recognizing same). In making this determination, the Supreme Court noted that SEC ALJs "hold a continuing office established by law;" "exercise … 'significant discretion' when carrying out … 'important functions;'" and "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges." *Lucia*, 585 U.S. at 247, 248 (quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878 (1991)).

Similarly, DOL ALJs have the power to hold conferences, manage motion practice, control the admission of evidence, impose sanctions, and issue subpoenas, among other things. 41 C.F.R. § 60–30.15. Thus, the Court finds that DOL ALJs are inferior officers subject to presidential control. *See ABM*, 756 F. Supp. 3d at 476 ("SEC ALJs' authority to conduct hearings are essentially the same as DOL ALJs, and DOL ALJs are therefore 'Officers of the United States' under *Lucia*.").

### ii.   Congressional restriction

In 1946, Congress enacted the Administrative Procedure Act ("APA"), which established a structure for how federal agencies create rules and conduct adjudications, including the ability

19

of ALJs to preside over agency proceedings. Pub. L. 79-404, 60 Stat. 237 (1946). Under the APA, ALJs are "employed only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a). Thus, Congress has placed a restriction on the president's removal power concerning DOL ALJs.

### iii. Constitutionality of restriction

Congress "may limit and restrict the power of removal [of inferior officers] as it deems best for the public interest." *Perkins*, 116 U.S. at 485. While "not all removal restrictions are constitutionally problematic," "a problem arises when [multiple] protections act in concert." *Jarkesy*, 34 F.4th at 463.

Here, there are two levels of removal protection. DOL ALJs are removable "only for good cause established by the Merit Systems Board [("MSPB")]," 5 U.S.C. § 7521(a), and members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office," *id.* at § 1202(d). In analyzing the constitutionality of dual removal protection, the Court considers whether DOL ALJs "serve sufficiently important executive functions, and whether the restrictions on their removal are sufficiently onerous, that the President has lost the ability to take care that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 463–64.

The Court concludes that DOL ALJs serve sufficiently important executive functions because they are inferior officers of an executive agency. *See id.* at 464 ("[I]f SEC ALJs are 'inferior officers' of an executive agency … they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions."). More specifically, DOL ALJs, like SEC ALJs, "exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding." *Id.*; *see* 41 C.F.R. § 60–

20

30.15(h), (j) (providing DOL ALJs' power to control evidence and impose sanctions); 29 C.F.R. § 1979.109(c) ("All … portions of the judge's order shall be effective ten business days after the date of the decision unless a timely petition for review has been filed with the [ARB].").

The Court also finds that the restrictions on DOL ALJ removal are sufficiently onerous that the President has lost the ability to take care that the laws are faithfully executed because, like in *Jarkesy*, if the President wanted a DOL ALJ to be removed, at least two layers of for-cause protection stand in the way. 34 F.4th at 465. Consequently, the statutory removal restrictions complained of here can be held to be unconstitutional. For that reason, the plaintiffs have demonstrated a likelihood of success on their claim.

### 2. Substantial threat of irreparable injury

A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). Irreparable injury is "harm for which there is no adequate remedy at law." *Daniels Health Sciences., L.L.C. v. Vascular Health Sciences., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). The plaintiffs argue that in the absence of injunctive relief, "[they] will suffer the irreparable harm of being subject to an illegitimate administrative proceeding" as well as "economic and reputational harms that result from the unconstitutional proceeding." Doc. #10 at 9.

#### a. Timeliness

The defendants contend that "Plaintiffs have … failed to demonstrate that they face imminent irreparable harm, because they have delayed seeking redress for the purported constitutional infirmities for years." Doc. #20 at 17. Specifically, according to the defendants, the plaintiffs' "five-year delay in filing suit defeats their assertion of imminent irreparable harm;" "[i]t is well established that 'a party requesting a preliminary injunction must generally show reasonable

21

diligence' [b]ut the DOL administrative proceedings … challenge[d] here first began in 2020, and Plaintiffs have participated continuously in those proceedings since then;" "[t]his type of years-long delay demonstrates that Plaintiffs will not suffer irreparable harm in the absence of relief;" "[n]othing prevented Plaintiffs from raising their claims within the past five years;" "the nature and extent of the President's Article II power to remove executive officers has been litigated for decades;" "even if Plaintiffs could show any ongoing or imminent harm arising from DOL's proceedings, their extraordinary delay refutes any assertion that its harms are imminent or irreparable;" "Plaintiffs have not offered any explanation for their delay;" and "Plaintiffs filed the present action on January 31, 2025[, and] they waited until March 19—nearly seven weeks later— to file a motion for emergency relief." *Id.* at 17–19 (quoting *Benisek*, 585 U.S. at 159).

The plaintiffs reply that "[their] request for injunctive relief is timely;" "they sought relief before the ALJs have issued a decision, and nothing more should be required;" and "[w]hile the Government insists that 'the nature and extent of the President's Article II power to remove executive officers has been litigated for decades,' it ignores that … *ABM* was decided just last winter and was the first court in the Fifth Circuit to hold the DOL ALJs unconstitutional … and … the Government itself changed the landscape just this year when it publicly admitted that the removal restrictions violate the Constitution."[18]  Doc. #23 at 6.

"It is not necessary to demonstrate that harm is inevitable and irreparable; the plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (quoting *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394

---

[18] The plaintiffs also argue that "[n]one of the Government's cited cases relate to enjoining government in the first instance, none relate to an injunction to halt administrative proceedings that would otherwise be conducted by an improperly insulated official, and most do not relate to government actors at all."  Doc. #23 at 6.

(5th Cir. 1986)). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 585 U.S. at 159.

Here, the plaintiffs have shown that without injunctive relief, they will be subject to illegitimate administrative proceedings, which constitutes an impending injury that cannot be fully repaired by money damages. The plaintiffs exhibited reasonable diligence since they requested preliminary relief only twenty-seven days after the Department of Justice publicly stated that "the multiple layers of removal restrictions for … ALJs … in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution." Doc. #9-1. Accordingly, the Court the plaintiffs' motion is sufficiently timely.

### b. Illegitimate Proceedings Led by Illegitimate Decisionmakers

The plaintiffs argue that "[t]he Fifth Circuit has recognized that if a removal claim is 'meritorious,' the plaintiff should not be 'forced to litigate before an ALJ who is unconstitutionally insulated from presidential control;'" and "[e]ven if an adverse decision were vacated for a constitutionally-complaint [sic] proceeding, it would be too late to fully repair the harm."[19] Doc. #10 at 10, 11 (quoting *Cochran*, 20 F.4th at 2).

The defendants urge the Court to follow the Tenth Circuit's holding in *Leacho, Inc. v. Consumer Product Safety Commission*, 103 F.4th 748 (10th Cir. 2024), and argue that "Plaintiffs' assertion they will suffer irreparable harm in the absence of an injunction is unavailing because any decision by the ALJ is appealable to the ARB, after which the Secretary of Labor may personally review the [ARB]'s decision, and a party that is dissatisfied with the final agency decision may seek judicial review in the appropriate federal court of appeals. Doc. #20 at 20–23.

In *Leacho*, the Tenth Circuit determined that "*Axon* does not help [a plaintiff] establish

---

[19] The plaintiffs also argue that "district courts in this Circuit have held that ALJ-removal protection claims present irreparable injury." Doc. #10 at 10 (citing *Energy Transfer*, 742 F. Supp. 3d at 760, and *Space Expl.*, 741 F. Supp. 3d at 640). Both of the cited decisions were affirmed by the Fifth Circuit in 2025. *Space Expl.*, 151 F.4th 761.

irreparable harm because *Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." 103 F.4th at 758. However, following *Axon*, the Fifth Circuit held that "the 'here-and-now injury' of 'being subjected to unconstitutional agency authority'" independently constitutes irreparable harm. *Space Expl.*, 151 F.4th at 780 (quoting *Axon*, 598 U.S. at 191). Because this Court is bound by Fifth Circuit precedent, the Court finds that the plaintiffs have sufficiently demonstrated that irreparable injury is likely in the absence of injunction based on the imminent unconstitutional AIR21 proceedings.[20]

### 3. Balance of harm and public interest

The plaintiffs argue that "an injunction would not harm Defendants because the government suffers no cognizable harm from stopping the perpetuation of unlawful agency action;" and "an injunction would promote the public interest," as "[i]t is not in the public interest to have an increasingly expansive Executive branch that slips from the Executive's control, and thus from that of the people." Doc. #10 at 11–12 (internal quotation marks omitted) (quoting *Space Expl.*, 741 F. Supp. 3d at 641).

The defendants respond that "[they] and the public would suffer significantly were this Court to enjoin DOL's AIR21 proceedings;" "[t]he [DOL]'s administrative proceedings are the cornerstone of Congress' whistleblower protection mandate in AIR21 [and w]ithout them, there could be no enforcement of AIR21's whistleblower protections, notwithstanding the critical role

---

[20] In addition to facing unconstitutional administrative proceedings, the plaintiffs also argue that "[they] will continue to suffer costs and time by [their] personnel preparing for the proceedings, legal fees, as well as reputational injury." Doc. #10 at 10. Because the Court already determined that the plaintiffs have demonstrated irreparable injury, it need not analyze this argument further. Even if the Court fully addressed it, it likely would find it has merit because the plaintiffs have made uncontested allegations of harm based on reputational and economic loss that cannot be remedied after the conclusion of the administrative proceedings. *See Emerald City Mgmt., L.L.C. v. Kahn*, 624 F. App'x 223, 224 (5th Cir. 2015) ("Grounds for irreparable injury include[s] loss of control of reputation.") (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004)); *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) ("Even purely economic costs may count as irreparable harm 'where they cannot be recovered in the ordinary course of litigation.'") (quoting *Texas v. U.S. Env't Prot. Agency*, 829 F.3d 405, 434 & n.41 (5th Cir. 2016)).

24

these protections play in keeping the public safe when they travel by air;" "[e]njoining these proceedings would thus thwart Congress's objectives, preventing DOL from 'effectuating' a 'statute enacted by representatives of the people,' and causing the United States to 'suffer a form of irreparable injury' as a result;" "[f]or five years, DOL has invested significant time and resources in the three matters at issue here, including the investigations conducted by OSHA and the adjudications performed by the ALJs and the ARB;" "[c]omplainants and their counsel have also expended significant resources participating in these proceedings for years;" and "halting these administrative proceedings during the pendency of the present action would raise the likelihood that, in the interim 'records will be destroyed, witnesses will go elsewhere, and recollections of the events in question will become dim and confused.'" Doc. #20 at 23–25 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012), and *IAM Loc. Lodge 1424 v. Nat'l Lab. Rels. Bd.*, 362 U.S. 411, 419 (1960)).

The plaintiffs reply that "[t]he Government has publicly admitted that ALJ proceedings violate the Constitution," "it concedes that it has long been aware of the potential violation," and "[y]et, the Government insists that because it has invested time and money into *DeBuse*, *Kozola*, and *Berg*, it would be harmed if the Court enjoined the proceedings;" "[t]he Government cites no support for its argument that past money spent to violate the Constitution justifies spending more money to continue violating the Constitution, and it certainly does not distinguish Plaintiffs' citation to contrary authority;" and "[t]he Government's arguments that AIR21 cannot survive without the ALJs fare no better, and are both alarmist and premature, as … a preliminary injunction will only relate to the parties (and even then only to the three proceedings at issue) not to the public at large [and] it does not identify a single safety concern stemming from enjoining *DeBuse*, *Kozola*, or *Berg*." Doc. #23 at 5–6 (emphases in original).

The Fifth Circuit has been clear:

> The government suffers no cognizable injury when a court halts unlawful agency action. Nor does the public interest suffer when an unlawful agency structure is prevented from subjecting countless individuals and companies to unconstitutional proceedings. To the contrary, the public is served when the law is followed.

*Space Expl.*, 151 F.4th at 780–81 (cleaned up).  Based on this, the equities and the public interest favor the plaintiffs.

### 4. Summary

The plaintiffs have established a substantial likelihood on the merits, a substantial threat of irreparable injury if the injunction sought is not issued, and that the balance of harm and the public interest weighs in their favor.  Accordingly, the Court will grant a preliminary injunction.

### D. Security

If a court grants a preliminary injunction, it must consider requiring security in case any party is "found to have been wrongfully enjoined."  FED. R. CIV. P. 65(c).  "[T]he amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court,'" and "the court 'may elect to require no security at all.'"  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)); *see Deep South Today v. Murrill*, 779 F. Supp. 3d 782, 830 (M.D. La. 2025) ("Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant.") (quoting 11A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed.)).

Here, there is no evidence that the defendants are likely to incur any significant monetary damages as a result of the preliminary injunction, which ensures that the plaintiffs' constitutional rights are protected.  *Bosarge v. Edney*, 669 F. Supp. 3d 598, 624 (S.D. Miss. 2023).  Thus, the Court will waive the bond requirement for the plaintiffs.  *See Tennessee v. Becerra*, 739 F. Supp.

26

3d 467, 485 (S.D. Miss. 2024) (waiving bond requirement due to "lack of evidence that an injunction will cause [the defendant] to suffer financial harm"); *Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 n.1 (E.D. La. 2020) ("Courts often waive the security requirement when 'the plaintiff was vindicating constitutional rights and the court determined that the defendant would not suffer any "material" damages due to the injunction.'") (quoting Erin Connors Morton, *Security for Interlocutory Injunctions Under 65(c): Exceptions to the Rule Gone Awry*, 46 HASTINGS L.J. 1863 (Aug. 1995)).

**V**
**<u>Conclusion</u>**

The motion for a temporary restraining order and/or preliminary injunction [9] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED as to the request for a preliminary injunction. The motion is DENIED in all other respects. The defendants are **ENJOINED** from issuing any further rulings, conducting any hearings, or otherwise continuing with the administrative proceedings involving Colin DeBuse, Adam Kozola, and Gregory Berg pending a final determination of this case on the merits.

**SO ORDERED**, this 31st day of March, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
